Good morning, Your Honors. May it please the Court, my name is Jared Frost. I'm a Deputy Attorney General from Las Vegas, Nevada, and it's my pleasure to represent the government of Las Vegas, Nevada, and it's my pleasure to represent the government of Nevada, Nevada, and it's my pleasure to represent the government of Nevada, Nevada, and it's my pleasure to Defendant Elvik was 14, almost 15 at the time he shot and killed the victim. The District Court incorrectly assumed that the statute applied to 14-year-olds. I say incorrectly because a person who has reached and passed his 14th birthday is no longer between the ages of 8 years and 14 years. Did you ever make this argument before now? Your Honor, what happened in the... No, just answer my question. We... You didn't, did you? I didn't make the argument about the applicability of the statute based on the defendant's age. What I did do, and what I told the court very clearly, is that the... So because you didn't make the argument, then you're forcing this court to determine whether the Nevada Supreme Court's decision was a reasoned decision, whether it was more than a summary decision, because the only reason a district court should develop other theories and arguments to support its decision is because the underlying decisions were not reasoned, or the underlying decisions were summary. And so therefore, what you're saying, if I understand your argument, is the district court was wrong in that it didn't develop a theory you had not presented before, or a theory that you didn't present to it, in order to support a decision different from the decision it made. Well, allow me to explain what did occur at the Nevada Supreme Court level and at the district court level. If you'll look with me on page 83 of the expert of record, the Nevada Supreme Court there determined that, quote, based on the facts of this case, the district court did not err in refusing to issue the instruction on knowledge of wrongfulness. And then it provided an alternative ruling that any alleged error was harmless. In the district court, I quoted the Nevada Supreme Court's ruling, including its determination that the trial court did not err and disputed Elvick's contention that he was entitled to the knowledge of wrongfulness instruction. That's on page 23 of my answering brief, which is on, which is docket 91 in the record below. So I was therefore quite alarmed when the district court ruled, without discussing the operative statutory language or citing any Nevada law supporting its conclusion, that NRS 194.010 was applicable in this case and that Elvick's age alone was sufficient evidence to require the instruction to be given to him. Well, the reason that I worry about this is based on your, the government's own idea, it seems to me that the government only argues to us that we should evaluate this decision on a harmless error standard and still affirm the decision. The government otherwise suggests that the district court should have developed its own theories and arguments to support its decision rather than taking the arguments made to it and making the decision based on that and that the Nevada Supreme Court's decision was therefore wrong. Now I have precedent that would suggest that the district court should develop other theories and arguments, but it's usually if the Nevada Supreme Court has an unreasoned decision or the Nevada Supreme Court has a summary decision where then the district court is permitted to do more than just examine the decision for the arguments made. I can't find that here. Therefore, it seems to me that if I can't find it, I don't know how I can find the district court erred in not developing other theories and arguments. The second point is, to go to your second point, which is, is this harmless error? And therefore, I'm constrained by those arguments in my evaluation, and I just wanted you to respond. Certainly, Your Honor. Well, to the extent that the district court was required to develop its own independent arguments that might support the state court's adjudication of this claim, this is a somewhat unusual situation where the Nevada Supreme Court did provide an explanation for why it denied Mr. Elvick's claim, but it did not address the specific line of argument which the district court developed and granted relief on. And so we have what is essentially a de novo review of this particular. Well, the argument was made to the Nevada Supreme Court that the instruction should have been given. And the Nevada Supreme Court, as I read its decision, did not hold that the statute doesn't apply to someone of this age, which is the argument that you just tried to make to us, which I don't see anywhere else in the record. What the Nevada Supreme Court said was the statute didn't apply because he didn't put his — he argued self-defense. So the statute wasn't relevant. And the district court, as I understand it — are you with me so far? Yes. The district court said, no, this is an element of the crime, so it has to — the instruction has to be given under Supreme Court law. So what — so I guess my question is why is that not correct? Well, not correct. Again, looking at the Nevada Supreme Court's order, I'm back on page 83 of the excerpts of record. Yes. It's all mine. Okay. Great. And where at the top of the page, the Nevada Supreme Court concludes that, based on the facts of the case, the district court did not err in refusing to issue this instruction. The first key point here is that there is no concession that there was ever error in the failure to provide this instruction at Mr. Elvick's trial. It says that a district court need not instruct the jury on the principles that are redundant with, rendered nugatory by other issues before the jury, or that do not bear on the disposition of the case. And then, as you say, the Nevada Supreme Court goes on to talk about the issue with Elvick's defense. And this is a — it's saying that this is — the Supreme Court is saying that this is — only comes into play when it's necessary for the defense. And the district court said, no, it's an element of the crime. Right. And that it is the government's burden to prove. And your — so what is your answer to that? And so, because the Nevada Supreme Court never addressed this line of argument, this critical line of argument that the district court relied on, it's like a claim that had not been addressed under the Johnson and Richter cases, which require habeas courts to conduct an independent review to see if there is any reasonable basis to support the state court's case. But you don't disagree that the argument was made to the Nevada Supreme Court that this instruction should have been given? No. No. Okay. All right. She stole my question. It was well done. Okay. Well, so — Do you want to turn to harmless error? That would be fine, Your Honor. I would. So with respect to the harmless error analysis, what happened here was the district court asked, again, the wrong question. The district court inquired into whether Elvick, quote, actually had the capacity to understand what he was truly doing when taking a man's life. Now, that's from page 34 of the district court's order. And it found that the record showed a lack of understanding of the gravity of the actions he committed. So what the district court was doing was trying to determine whether Elvick understood how wrong his actions were, instead of whether he understood that they were wrong. And that's a big difference where you can end up with a very different outcome in this case. But this is really not a sufficiency of the evidence standard. We're not talking about sufficiency of evidence here. We're talking about harmless error. Correct, Your Honor. The standard is — So, therefore, it seems as if that if we're talking about harmless error and the Nevada Supreme Court talks about sufficiency of the evidence, we've got to change to harmless error and the government has to prove harmless error beyond a reasonable doubt. Wouldn't you agree? Your Honor, my understanding is that harmless error is the defendant petitioner's responsibility to show that the error was harmless by showing that there was a substantial and injurious effect on the verdict. One of the — go ahead, if you had a question. The petitioner has that burden or you have that burden to show that no reasonable — that it's shown by the standard of beyond a reasonable doubt that a reasonable jury could not have found that he lacked the capacity to know right from wrong. I'm restating the statute there. Isn't that your burden? Your Honor, I may have misspoke. I was remembering a story that suggests that in federal habeas, virtually all the burdens are on the petitioner. But I may have misspoke. I don't want to muddy the waters there. Well, the biggest problem that I worry about here is if I apply instructional error on a harmless beyond a reasonable doubt standard and I suggest that one of the elements of the conviction was intent, then I'm having a tough time understanding how this instruction could be harmless because it absolutely deals with whether the defendant could have formed the intent, whether he could not have known it was wrong. And if it's applicable, and I know you want to get it outside of being applicable, but if it's applicable, I'm having a tough time understanding how it could be harmless. Well, Your Honor, the reason I would offer is that the basic understanding that killing and robbing an individual is so low and there is so much information here that tells you that Elvick understood that, that there's really, again, unmistakable in this case that he understood that killing and robbing the victim was wrong. So in your briefing, you refer to several facts that you say establish that no reasonable, I think, that no reasonable jury could have concluded that he lacked the capacity to know the difference between right and wrong. You talk about the taking of the vehicle. You talk about driving the vehicle interstate. You talk about hiding evidence. You talk about evading the police and other things. In terms of applying the standard as to what a reasonable jury would have done, is all of that evidence to be reviewed? And if so, was all of that evidence before the jury? Yes, Your Honor, to both questions. Was all of the evidence before the jury as to the statements made by the Petitioner when being interviewed? I assume that was part of the record. It's certainly part of our record, but I can't answer that question for sure. Well, does it matter if the statements made during the interview concerning his mother and other things were not presented in the trial? Can they still be considered in determining what a reasonable jury would have done? I assume that in determining what a reasonable jury would have done, that that would therefore limit our analysis to what was presented to the jury, right? Is there a way of determining those things that you've identified as establishing knowledge, which were before the jury? I've provided in the brief citations to the trial transcripts, I believe, with many if not all of these factual circumstances that I believe are compelling evidence that Elvick understood the wrongfulness of his actions. In Moro Lilo, we said, when the judge feels himself in a virtual exquipose as to the harmlessness of the error and has grave doubts about whether an error affected a jury substantially and injuriously, the judge must treat the error as if it did so. It seems to me that's the standard the district court needed to use in this particular situation. Would you agree? I would agree. And yet you would suggest that on this record, given that standard, we could find a harmless error? Yes, Your Honor. For the arguments you've already made, I guess. Right, because the district court, I believe, disregarded this very compelling evidence that Elvick did know that killing and robbing the victim was wrong. Well, there was also evidence, was there not, that, I mean, he said he didn't even understand why anyone cared about what he'd done. He said he continually referred to the juvenile detention. When asked about the earthquake or dying, I guess, or not dying, he said, well, how do you know if there's not going to be some big earthquake and I fall in the crack and then I die? I mean, all of that seems to indicate he wasn't an adult for sure. He was certainly a teenager, certainly with less mental capacity than others, and mixed up. Well, Your Honor, it's important to remember that these statements should be taken in context of his initial attempt to try to avoid responsibility for his crime, to mislead the police officers, gave a false name to the police officer just prior to his arrest. And, again, this goes to whether he understood all the potential consequences of his actions. That's not the key question. The key question is whether he understood this very basic moral concept that killing and shooting the victim was wrong. Well, but is that the basic question or is the basic question, as I tried to suggest before, this was instructional error. It's got to be harmless beyond a reasonable doubt. And if a jury was told he couldn't form intent, there was a presumption he could not form the intent, and then the government has to go in and show it, but the jury doesn't know there's any presumption. They don't know that he doesn't have the chance to form the intent. They don't know all of that, that then we can just whitewash this record, it was easy to show. Isn't that the real question rather than you're suggesting he has knowledge or he doesn't have knowledge? The question is whether he has the knowledge or not, if there's a presumption he doesn't, the government has a higher burden even to show knowledge, doesn't it? Yes, there's a higher burden if this statute applied in this case. And we can't tell what the jury would do if the government had a higher burden as to that knowledge or intent. Well, I think you can, and I think you can look at the Poole case to make that determination. But the Poole case is not about instructional error and harmlessness. The Poole case is about sufficiency of the evidence, and we're not here determining sufficiency of the evidence because on that you would have a leg up because the evidence was presented, and we would suggest that on the sufficiency of the evidence we have to give every benefit of the doubt to you. Here we're not. We have to say quite the opposite. Well, Your Honor, you know, I've cited to the Pulido case, which does a harmless error analysis, a federal Brecht analysis, and what they're doing there is they're looking at the record evidence to try and make a determination about whether this instructional error ended up causing a harmful and injurious effect on the verdict. So the evidence is absolutely relevant and should be considered by this court in determining whether this would have made a difference. And as I've pointed out, there is compelling, unmistakable evidence in this case that Elvick understood that what he was doing was wrong. Go ahead. Was an alternative ground for the conviction felony murder through the robbery? I believe so, Your Honor. Is intent an element of that? No, Your Honor. Okay. Thank you. Thank you. Good morning, Your Honors. Lori Tyker. Excuse me. Lori Tyker on behalf of Peter Elvick. Respectfully, Judge Smith, you're absolutely right in terms of how this was presented, how Judge Navarro evaluated it in the district court, and what her ruling was. I find it interesting that you cited Murillo to stand for the proposition that it did. Murillo was written by Judge Navarro sitting on a panel with Judge Schroeder, and she absolutely knew what she was doing when she took a look at this error and evaluated it appropriately. In terms of felony murder, and I will, Judge Cronstadt, briefly respond to that, felony murder was an alternative in the open murder that was charged against Mr. Elvick, although I would point this Court's decision or, I'm sorry, point your attention to jury instructions 23 and 24 that were given in this trial located at EORs 125 and 126. Within both of those instructions, it does state that in order to prove the commission of first-degree murder with use of a deadly weapon by felony murder, each of the following elements must be proved beyond a reasonable doubt. A human being was killed. It was unlawful. It was committed in perpetration or attempted perpetration of robbery. And four, the defendant had the specific intent to commit robbery at the time of the killing. This was the instruction that was given to the jury. The next instruction, 24, states the unlawful killing of a human being, whether intentional, unintentional, or accidental, which occurs during the commission or attempted commission of the crime of robbery is murder in the first degree, when the perpetrator had the specific intent to commit such robbery. And I would note that for the record in terms of dealing with the felony murder issue and the instructions that were given to the jury at this time for Mr. Elvick. I would also point out regarding felony murder that, and what this court has reminded the government, is that this instruction, this presumption was not given to the jury. It's a presumption that he had the knowledge at the time of the shooting that he truly knew what he was doing at the time of committing the act and that. Isn't the presumption the opposite? That. That he didn't and that the government. That he didn't. Exactly, that he didn't. I'm sorry. And the state had to show that he did. I was going to say, if that were the presumption, I don't know why you argued for that jury instruction. All these rebuttals are irrebuttable.  And the fact remains that the government didn't have to prove that here. And it's critical. It's critical in terms of the error and that the district court properly found that there was 2254-D1 error here and that the refusal to give the instruction was not harmless. The trial court properly found that there was direct prejudice here and that the failure to give the instruction had a substantial and injurious effect on the verdict. As the district court said, it would be much easier for the jury to reach the murder verdict without the instruction. Just because they rejected self-defense didn't mean that they found clear proof. Again, clear proof is in that instruction that the defendant knew of wrongfulness at his age. I take issue with all of the facts that the state has pointed out, and I think that, again, Your Honor's reference to what was actually presented to the jury in terms of what Mr. Elvick said of the statements is a little bit murky in terms of what they argued there and what was actually presented at trial. Does it matter? I'm sorry? Does it matter in applying the standard? I think it does, because why is that? Again, you know, the fact remains, none of this – it was an element of the crime and it was not presented to the jury. And what was – what the defense didn't present – No, that's not my question. In evaluating whether a reasonable jury could – whether it can be shown beyond – by a standard of beyond a reasonable doubt, that no reasonable jury would find that the defendant, the Petitioner, lacked capacity, are we limited to only the evidence that was presented in the trial? Yes. What case says that? That's a good question in terms of what case. That's just a fundamental – you're limited to the record. In terms of – Well, the record here includes interviews where the Petitioner said that he had taken LSD. But it was a jury question. And so a question that should have gone to the jury – the jury should have evaluated that standard. But we're not – we're evaluating a different issue, whether a reasonable jury could have so concluded. That's true. Again, I would maintain – and I'm sorry I can't cite a case for you, but I would maintain that premise. I would also maintain that there are lots of facts here that are incredibly inconsistent with knowledge of whether or not he appreciated the wrongfulness of his act at the time of the shooting and that there was clear proof of that. And I believe that I laid that out in the briefing. What about the facts that he said at one point that he had taken LSD, but later at trial had stipulated he was not under the influence of drugs? What about the fact that he concealed the weapon? What about the fact that he invaded the police for over 12 hours? What about the fact, actually, that notwithstanding the question about juvenile detention in California or Nevada, couldn't that be interpreted as sophistication to see the difference? And what about the fact that he was so close to being 15? It could be evaluated and goes towards that in terms of his capacity to understand what he was truly doing at the time that he actually took a man's life. But, again, you have to look at what he was thinking at the time that he was committing the act. I think that you can certainly look to those factors, but you also have to look at what he was going through at the time and whether or not he really had the capacity to understand the wrongfulness when he fired that shot. And what he testified to when he fired that shot was that he was afraid. He was going through all of these things. There were all of these negating factors that showed that he didn't appreciate the wrongfulness of his acts. It would have been so many different things. It's just strange that he would have chosen to walk to California when he could have taken his grandfather's car. He didn't walk to California. You mean to the shooting range. I'm sorry? He didn't walk to California. He drove a car to California. He walked 14.7 miles. To the shooting range. He walked 14.7. And, again, that doesn't make sense. Was he carrying a shotgun at the time? He had a shotgun at the time. His testimony was that he was contemplating suicide. He was despondent. His mother had told him he was homeless. He couldn't come home. She had given his things away. All of these things in terms of his appreciating the wrongfulness, it doesn't make sense. He's completely confused. After he does end up, the shooting happens, he's freaked out, he ends up driving to California. The police, after you say evidence of his wrongfulness is that he evaded police, he's actually arrested 100 feet from his mother's home. He wants to talk to the mother who actually threw him out and gave all of his things away. That was 14 hours after the police began searching for him, correct? That's correct. There was the amount of time that he had taken to drive to California as well as the amount of time for his grandfather to say that he was actually missing. So I believe that those hours were somewhat less in terms of that. In terms of his evading the police, again, it's what a child would do. Making up different stories as to what happened, it's what a child would do. Again, in evaluating a juvenile, this court and all courts, in fact, scientific evidence is becoming more and more clear in terms of the ability of juveniles to not only rationalize and understand truly what they're doing, but to be able to appreciate the wrongfulness and the development of how to react to certain situations which certainly could have been at play here at the shooting range when this happened. We also have to take a look at the fact that it just doesn't make sense that Mr. Elvick would have taken the rifle to go to rob someone at a shooting range  Why in the world would a 14-year-old do that? That just doesn't make sense. Plus, take into consideration the fact that in walking those 14.7 miles, he walked through downtown Carson City. He walked past stores, 24-hour casinos where there were people with cars. He could have easily stopped and accosted one of them. He walked past an off-duty Clark – I'm sorry, not Clark, a different county – Carson City sheriff's officer, testified that she saw him out walking at 1250 and called it in later. He could have accosted all of these people, and yet if what the State says, he intended to go to a shooting range to rob someone and get a car, why in the world would he do that versus passing all of these other people? Again, appreciating the wrongfulness of his actions, he had been to the range with his grandfather. He'd been there shooting. They said that the gun was worth a lot of money. In his head, he could have maybe sold that gun once he happened upon that, because the evidence shows in his testimony that he didn't know what he was doing. He wanted to go home. You may want to listen to his question. Okay, I'm sorry. You're not suggesting that the intent had to be formed before he went to the shooting range. Couldn't the intent have been formed after that, while there? Well, it had – whether or not – what it is is whether or not the statute is that the – well, yes. The instruction is that the jurors had to determine that he had the capacity to truly – to understand what he was truly doing at the time that he was committing the act. Okay. Do you agree that during the post-Miranda warnings, there was an interview in which the petitioner denied remembering anything about whether there was a shooting? I believe that he did. And did he later then say he did remember the shooting in a subsequent interview? Yes. How is that consistent with not knowing the difference between right and wrong? Remembering the shooting versus understanding the difference between right and wrong are two completely different things. Well, denying the shooting suggests not wanting to take responsibility and the risks associated with it based on a potential knowledge of the seriousness of the offense. However, I think in terms of the problem of the instruction not being presented to the jury is that that is a question for the jury to determine. And the jury was never allowed to determine that to show whether or not they believed that that did prove that he understood the wrongfulness at the time of the killing. In terms of – and Poole, which the government responds to and cites, you know, to great length, that it shows everything about Nevada in terms of the statute. I would point out there that the Nevada Supreme Court did look at that and determine that that child who had said, I knew I would get in trouble, which is somewhat analogous to what you said, was enough for the Nevada Supreme Court to reverse. During one of the interviews, the petitioner expressed concern about having the weapon with a friend, the weapon he had taken from Nevada, with a friend in California because the friend was on some sort of probation or parole. Do you recall that? And therefore that could be deemed a violation of the probation or parole and could lead to this person having problems with law enforcement, i.e. parole could be revoked, probation revoked. Do you think that bears on understanding the difference that's at issue here? I think so because what you're dealing with is the wrongfulness of taking a man's life. Well, if you understand that your friend may get in trouble for having possession of a firearm, is that not reflecting that you know the difference between right and wrong? It's understanding the wrongfulness. I think it's more than the difference between right and wrong. It's the difference between the state has to prove the knowledge between good and evil, that the knowledge distinctly appeared from the evidence presented in front of it, of what Mr. Elvick understood at the time of the killing. Thank you. If there are no further questions. If we were to disagree with you as to this harmlessness of this instruction, will you then move to your cross appeal, right? Yes. Is there anything you want to argue about that cross appeal? I would submit the cross appeal on the briefing. I believe that it's fairly extensive. I would direct the Court's attention to Miranda. I think that the District Court and the Nevada Supreme Court did err and that it was an unreasonable application there. They did reflect that it was a close call in terms of the voluntariness of the confession, and with that I would submit it on the briefing. Okay. Thank you. Thank you very much. Thank you, Ms. Tiger. Did we allot you more time? I don't know. I believe my time has expired. Oh, you've got 50? It's expired? Yes, he's red. You want to give 30 seconds? I'd be happy to, Your Honor. I remember being in your shoes and having my time expired because somebody was questioning me forever. I wanted to have 30 more seconds, so I'm giving it to you. Thank you, Your Honor. But you have to argue the case that the judge couldn't argue. That would be a trick. Just very briefly, Elvick's counsel made a reference to Elvick doing what a child would do, and what I believe the record shows is that a rather sophisticated teenage youth who drove 450 miles to California, who checked into a hotel, who evaded police for 15 hours, discarded evidence, this is not the actions of a child. This is a rather sophisticated teenager who was engaging in adult activities and understood very well that what he had done was wrong. And with that, I'll conclude. Thank you. Thank you. Thank you both for your arguments. I appreciate them very much.
judges: Kronstadt, Schroeder, Smith